## ALICE GRIFFITHS v. B. C. OGLE, et al.

Eastern Section, February 11, 1928.

No petition for Certiorari was filed.

1. **Ejectment. Defendant losing possession of land is entitled to recover value of improvements placed thereon in good faith.**

   In an action to recover certain property, held that the defendants were entitled to recover the value of improvements placed thereon, provided they were acting in good faith, and the fact that there was some evidence that defendants had heard that someone else was claiming the property, but in fact no actual claim had been made for the property was not sufficient to show defendants acted in bad faith in placing improvements on the property.

2. **Ejectment. Defendant in ejectment is not liable for increased value of the land caused by improvements.**

   A bona-fide occupant holding possession of land under color of title is not liable for the increased rental value of the land caused by improvements put upon it by himself. In such cases the estimate of rent should be made with reference to the condition of the land at the time when he entered upon it, unless the occupant has been allowed full compensation for improvements, or the owner is required to pay interest on the value of the improvements.

3. **Costs. The assessment of costs lies in the sound discretion of the Chancellor.**

   In an action to quiet title to real estate, held that the Chancellor's apportionment of the costs should not be changed by the appellate court where his discretion was not abused.

Appeal from Chancery Court, Knox County; Hon. Robert M. Jones, Chancellor.

Affirmed.

B. C. Ogle, of Knoxville, for appellant, Ogle, et al.

Green, Webb & Bass, of Knoxville, for appellee, Griffiths.

OWEN, J. Alice Griffiths hereinafter called complainant, filed her bill February 25, 1923 in the chancery court in Knox county seeking to recover a certain house and lot on Middlebrook avenue. It appears that the lot in controversy is thirty-seven feet by one hundred feet and it is described minutely. In complainant's bill it was shown that she purchased the lot in controversy, from Frederick Ball and wife Mary Ball, and deeded to her on the 3rd day of January, 1896. It was alleged that the defendants were in possession of complainant's property, that they were claiming title by virtue of a deed made by the widow of Frederick Ball and his children which deed was executed the 21st day of July, 1920. Complainant sought to recover in addition to the lot, the rents. The defendants answered denying that complainant was entitled to possession or that she had a valid deed from

Frederick Ball or that she was entitled to rents. By way of cross-bill the defendants made the following allegations:

Defendants by way of cross-bill alleged that the property was conveyed to Frederick Ball in March, 1889, and that the said Frederick Ball died and left surviving him his widow, Mary A. Ball (who later married Sam Lyghtle) and three children, Oliver Ball, W. A. Ball and Frederick Ball, Jr., and that by deed dated July 21, 1920, Mary A. Lyghtle, Oliver Ball, W. A. Ball and Frederick Ball, Jr., conveyed the property to B. C. Ogle, who went into immediate possession of the same.

Defendants further allege that B. C. Ogle and wife, Nellie Ogle, on September 22, 1920, conveyed the property to J. J. Conner and Charles Galbraith, and that on December 27, 1920, the said Charles Galbraith reconveyed his undivided one-half interest in the said property to B. C. Ogle. Afterwards B. C. Ogle and J. J. Conner conveyed the property to Jasper Wallace and Maggie Wallace. Defendants further allege that at the time the complainant claims to have obtained the deed from the said Frederick Ball to the property, the said Frederick Ball had been adjudged insane and a guardian had been previously thereto appointed to look after the said Frederick Ball's property, an that the guardian was at the time exercising his rights as guardian; and that on January 6, 1896, Jobe C. Lawrence, who had been appointed as guardian, resigned. Defendants allege that if Alice Griffiths has in her possession a deed to the property, that the same was void on the ground that the said Frederick Ball was insane at the time he signed the deed, and that this fact was known to the complainant.

Defendants and cross-complainants prayed that the deed under which Alice Griffiths claims title to the property, be declared null and void, and of no effect, and that it be removed as a cloud upon cross complainant's title; but that, if they be mistaken in their rights, and the court should be of the opinion that Alice Griffiths is the owner of said property, a judgment be rendered against her in favor of J. J. Conner and B. C. Ogle for the value of the improvements made upon the said property, and for the taxes paid by them.

Alice Griffiths, cross defendant, answered the cross-bill of B. C. Ogle et al., denying that Frederick Ball was insane at the time the deed was executed by him and his wife, conveying the property to cross defendant. Cross defendant alleges that the said Frederick Ball was of sound mind and knew and understood the results of his act, and that the deed was in all respects regular in every way and properly recorded in the Register's office of Knox county, Tennessee, and that the said deed on its face showed a valuable consideration for the transfer of the title.

Cross defendant further alleged that for more than twenty years she was in possession of the property and exercised ownership, and paid taxes on the said property.

A number of depositions were taken. The Chancellor sustained complainant's bill and ordered reference to the Clerk and Master to ascertain as to what improvements had been made by the defendants, the value thereof, how much the property had enhanced by these improvements, what taxes had been paid by the defendants, what rents the defendants had collected and what interest the defendants were entitled to upon their taxes paid and improvements made. The Chancellor held that the defendants purchased in good faith from the heirs of Frederick Ball. The Clerk and Master after some delay on account of some of the papers, in the file, having been lost, made his report. This report was confirmed and the Chancellor filed the following findings of fact:

## I.

"That Frederick Ball and wife, Mary Alice Ball, on January 3, 1896, conveyed the property in question to the complainant, Alice Griffiths, an unmarried colored woman, which deed was recorded on March 3, 1896 (see copy of said deed on file), and that thereafter the complainant paid taxes for many years upon the said property, including the years 1924 and 1925.

## II.

"That on July 21, 1920, Mary A. Lyghtle (formerly Mary Alice Ball, her husband having died in the meantime), conveyed jointly with the children and heirs of the said Frederick A. Ball, namely, Oliver Ball, W. A. Ball, and Frederick Ball, Jr., the said property to defendant, B. C. Ogle, which deed was recorded on October 1, 1920. (See copy of deed on file.)

## III.

"That before the defendant, B. C. Ogle, bought the property he talked with the heirs of Frederick Ball, deceased, and they claimed to own it, and he agreed with them on a price and he (Ogle) then made an investigation in the Register's office but failed to find the deed under which the complainant claims title and heard nothing of her claim until after he (Ogle) had sold the property to the defendant J. J. Conner and one Galbraith (said Galbraith is not sued in this cause). The court further finds that the said Ogle acted in good faith in purchasing the property.

## IV.

"That on September 22, 1920, the defendant, J. J. Conner, bought the said property from the defendant, B. C. Ogle and the said Gal-

braith and went into possession thereof and built a new house on the land, and that the deed made to Conner by the said Ogle and Galbraith was a special warranty deed.

### V.

"That on March 13, 1922, the defendant, J. J. Conner, sold the said property to the defendant, Jasper Wallace, and made him a deed therefor, and the said Jasper Wallace at once went into possession, building one house soon after he bought it and another house the following year, and that there are now three houses on the property. But, when Ogle first bought the property there was no house on it except a dilapidated building worth nothing except for material and the material was of very little value.

### VI.

"That defendant, Jasper Wallace, who is now in possession and has been in possession of the property since he purchased it from Conner, has been paying the taxes thereon ever since he bought it and that the said Wallace did not have the title examined, but that his vendor, the defendant, J. J. Conner, told him that the complainant, Alice Griffiths, was talking about bringing a lawsuit claiming the property belonged to her, but that he (Connor) would stand by him (Wallace) if anything turned up and would repay him all the money he paid into the property.

### VII.

"That (confirming the report of the Master) the improvements placed on the property by Conner and Wallace are worth thirteen hundred and ninety-three ($1393) dollars, and that the said Conner and Wallace have paid one hundred and seventeen dollars and twelve ($117.12) cents of taxes on the property since they purchased it and that the enhanced value of the land by reason of said improvements is $1700 and that the increase in value from the time the defendants purchased it to the time of the decree in this cause is fourteen hundred ($1400) dollars.

### VIII.

"That (confirming the report of the Master) the rents of the property since its purchase by the defendant Conner amount to eleven hundred and fourteen ($1114) dollars without interest, and that after allowing the defendants credit for the improvements and taxes with interest thereon and after charging the defendants with rents without interest there is a balance due the defendants of six hundred ninety dollars and fifty ($690.50) cents. This January 31, 1927."

Both parties excepted to the final decree, prayed and were granted appeals to this court. The defendants perfected an appeal. The

complainant has filed the record for writ of error, and has assigned four errors as follows:

1.

The court erred in holding that the defendants were not chargeable with notice when they made the improvements on the land.

2.

The court erred in rendering a decree against the complainant for the sum of $690.50, which amount represented the difference between the enhanced value of the property and the amount of rents to which the complainant was entitled to recover from the defendants.

3.

The court erred in taxing the complainant with half the costs of this cause.

4.

The court erred in not allowing complainant interest on the sum of $1114, being the amount of the rents collected by defendants.

The defendants have assigned three errors; defendants' errors raise the following propositions:

1.

The court erred in holding that complainant was the owner of the lot in controversy and entitled to possession of same.

2.

The court erred in charging the defendants any rents.

3.

If chargeable with any rents, the court should not have charged continuous rents on the building but charged with the rents actually received.

As to defendants' first assignment of error, the court reached the right conclusion in holding that the complainant was entitled to the lot. It appears that Frederick Ball, a colored man was a pensioner. He was a soldier in the Federal Army and drew $216 every three months as a pension. Before Frederick Ball married Mary Alice Ball he had a guardian appointed to collect his pension money, but after he married, the guardian resigned and the county court of Knox county, Tennessee, decreed that Frederick Ball was capable of attending to his own affairs. Lawrence resigned as guardian January 6, 1896. The fact is that while Frederick Ball was blind he was never insane; he bought and sold several parcels of land in Knox county. The complainant, after she purchased this lot from Ball, received rents from a tenant named Gray, $.50 a week. The complainant moved to Chicago and resided in Chicago from about the time she purchased her lot until she filed her bill. Shortly before defendant, Ogle purchased the lot in controversy, Frederick Ball and Mary Ball's youngest child reached his majority. The children of Frederick and Mary Ball who had been remarried to one Lyghtle, conveyed this lot to defendant, B. C. Ogle. Mr. Ogle is a lawyer. He examined the title

and he states that by some oversight he overlooked the deed from Frederick Ball and Mary Ball to complainant; that had he seen that deed he would not have purchased the property. It is also stated that the deed to complainant is void because there was no consideration. Neither of these insistences can be sustained. The first assignment of error is overruled; as to the last two assignments by the defendants, we are of the opinion that the defendants should have been charged with rents and the amount charged as rents is the concurrent finding of the Clerk and Master and the Chancellor, and we find evidence to sustain the same. The defendant's assignment of error is overruled; as to complainant's assignments of error we are of the opinion that the defendants are entitled to recover for their improvements; that they were acting in good faith. It is true that before some of the improvements were made, defendant, Wallace heard that some woman was claiming the property but she took no step to assert her rights before the filing of the bill and she knew that the defendants were placing valuable improvements upon her lot, and we are of the opinion that the Chancellor reached the right conclusion in allowing the complainants to recover for the improvements made. 15 Cyc., page 205, which is said:

"A bona-fide occupant holding possession of land under color of title is not liable for the increased rental value of the land caused by improvements put upon it himself. In such cases the estimate of rent should be made with reference to the condition of the land at the time when he entered upon it, unless the occupant has been allowed full compensation for improvements, or the owner is required to pay interest on the value of the improvements."

Our own case of Howard v. Masengill, 13 Lea, 588, holds to the same effect that the complainant cannot take the property of the defendants without compensation.

"All of these improvements have been made in the past five years, and without knowledge of complainant's title; some of the most valuable of them are yet incomplete, their progress having been arrested by this suit. The builders and occupants have as yet received little or nothing from their outlay. To limit their allowance for betterments, by the amount of rents and profits, is practically a total denial of the very equity of their claim, i. e., that complainant shall not take from them, without compensation, things of value, placed by them in good faith on her land, which now, because they are fixtures, necessarily inure to her benefit."

This proposition is sustained by the following Tennessee cases:

Aiken v. Suttle, 4 Lea, page 122; McKinley v. Holliday, 10 Yerg., page 477. It results that complainant's first assignment of error is overruled. The other assignments of error by complainant raise the proposition of the costs taxed to complainant and in not allowing interest on the rents. These were matters clearly within the sound dis-

cretion of the Chancellor, and we are of the opinion that he committed no error in his decree which results that all assignments are overruled. The decree of the lower court is affirmed; the costs in the lower court will be paid as decreed by the Chancellor. Complainant's petition for writ of error is dismissed. The costs of the appeal and filing of the record for error will be paid one-half by complainant and her surety on writ of error bond and one-half by defendants and their surety on appeal bond, execution will issue accordingly. This cause will be remanded to the chancery court of Knox county for the purpose of carrying out the Chancellor's decree.

Heiskell and Senter, JJ., concur.